UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No: 13-15-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| DONALD DEMIL CLAY, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Magistrate Judge Robert Wier recommends denying Defendant Donald Demil Clay's motion to suppress certain evidence of cocaine trafficking and firearms offenses discovered by Frankfort police during a search of Clay's apartment. [R. 31]. Clay objects to the Recommendation on narrow grounds. [R. 33]. First, Clay argues that Judge Wier improperly found that Clay's live-in girlfriend, Kendra Mitchell, had apparent authority to consent to a search of the house because she did not have a key, her name was not on the lease, and her statements were corroborated only by evidence found after entry. Second, Clay argues that Judge Wier improperly found a substantial basis for the search warrant containing the generalized representations of an unnamed person, especially when corroboration from the unconstitutional entry is excised. These objections trigger this Court's obligation to conduct a *de novo* review. *See* 28 U.S.C. § 636(b)(1)(c). The Court has satisfied that duty, reviewing the entire record, including the parties' arguments, relevant case law and statutory authority, as well as applicable procedural

rules.  For the reasons set forth below, the Defendants' objections to the Magistrate Judge's Recommended Disposition shall be **OVERRULED** [R. 33], and his motion to suppress shall be **DENIED**.  [R. 20].

I

The Magistrate Judge conducted an evidentiary hearing on the issues of the Defendants' motion and sets out the factual and procedural background of the case in his Recommended Disposition.  [R. 31].  The Court shall not attempt to fully detail what has already been thoroughly described and largely agreed upon, and therefore, incorporates his discussion of the record into this Order.[1]  However, to briefly summarize, Donald Clay lived for a period of time in an apartment on Leawood Drive in Frankfort, Kentucky, with his then-girlfriend Kendra Mitchell.  Early in April 23, 2013, an altercation between the two caused Mitchell to flee the residence and call the police.  The scorned Mitchell met with Sergeant Quire and Lieutenant Sutton of the Frankfort Police Department and, in addition to expressing her desire to press charges for the assault, divulged information about drugs and a gun that Clay kept in a locked closet in the apartment.  Quire and Sutton, along with Sergeant Ebert and Officer Roberts, traveled to the residence.  Though Mitchell did not have a key, she signed a consent to search form, and the officers obtained a key from officials at the apartment complex.  Sutton, Ebert, and Roberts found the locked closet door and then secured the scene while Quire and Detective Courtney drafted an affidavit for a warrant.  Quire took the warrant affidavit to

---

[1] Clay drafts a somewhat lengthy recitation of the facts, wherein he is critical of the Frankfort police. However, he does not offer a particularized challenge to the Magistrate Judge's factual findings beyond the context of the enumerated objections.  As such, the Court need not sift through and weigh again every fact found by the Magistrate Judge.  Had Clay sought such a review, a specific objection would have been required.  *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).  It bears noting, however, that in reviewing the record and applying the required deference to the Magistrate Judge's factual findings, the Court cannot, in any instance, conclude that they are clearly erroneous, which would be a necessary finding were the Court inclined not to uphold them.  *See United States v. Esteppe,* 483 F.3d 447, 452 (6th Cir.2007).

2

the Franklin County Attorney, who approved it. Finding that affidavit established probable cause, Special Circuit Court Judge Reed Rhorer issued the warrant to conduct a search of the locked closet in Clay's apartment. The officers then forced entry into the closet, which was searched along with the rest of the apartment. The search revealed the drugs and gun that Clay now seeks to suppress.

II

A

Clay challenges the Magistrate Judge's finding that Mitchell's consent provided the officers with apparent authority to initially enter the apartment. Clay notes that his former girlfriend did not have a key to the apartment and neither of their names were on the lease to the apartment, a fact that the officers knew before initially entering. Further, Clay argues that any evidence that could have corroborated Mitchell's information about the apartment was either discovered after entry – such as the cell phone, indications that two people lived in the apartment, and the locked closet – or was not known to the officers who were actually entering the premises – such as the brown van in the parking lot.

The Fourth Amendment, which protects against unreasonable searches and seizures, has been interpreted to "draw a firm line at the entrance of the house," such that searches and seizures inside a residence without a warrant are "presumptively unreasonable." *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1511 (6th Cir. 1988) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 474-75 (1971)). However, the Constitution is not offended by the warrantless entry of a home when consent to search it is given by someone with common authority over the premises. Common authority "rests

3

rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *United States v. Hunyady*, 409 F.3d 297, 303 (6th Cir. 2005) (citing *United States v. Matlock,* 415 U.S. 164, 171-72 n. 7 (1974)). All parties agree that the one giving consent need not have actual authority to do so, as long as the officers "relied in good faith on a third party's *apparent* authority to consent to the search." *Id.* (citing *United States v. Gillis,* 358 F.3d 386, 390 (6th Cir.2004)).

> Apparent authority is judged by an objective standard. A search consented to by a third party without actual authority over the premises is nonetheless valid if the officers reasonably could conclude from the facts available that the third party had authority to consent to the search.

*Id.* (citing *Gillis,* 358 F.3d at 390-91).

There are no shortage of cases wherein a man accused of assaulting and expelling his live-in girlfriend found himself in federal court arguing that she did not have apparent authority to consent to a search of the dwelling where he kept his drugs and guns. Further, a survey of those cases reveal that the Clay's counterparts have found themselves in an uphill battle to make a showing that the women who they cohabitated with did not, in fact, have the apparent authority to consent to a search to the place from which they had been driven by their abusive boyfriends.

In *Illinois v. Rodriguez*, the United States Supreme Court found that a battered live-in girlfriend could potentially be found to have had apparent authority to consent to the search of her boyfriend's residence if "the facts available to the officer at the moment ... warrant a man of reasonable caution in the belief that the consenting party had

4

authority over the premises." 497 U.S. 177, 188 (1990) (citing *Terry v. Ohio,* 392 U.S. 1, 21–22, (1968)). The Court did not provide an exhaustive list of factors to be used in making this determination, but the circumstances under which it remanded the case for further consideration are somewhat revealing. Gail Fischer, the cohabitating girlfriend of the defendant, approached the police to report that she had been assaulted by her boyfriend. *Id.* at 179. Fischer indicated that she either lived or had lived in the apartment and maintained clothes and furniture there. *Id.* Though the Court remanded the case for further consideration, the possibility that Fischer had apparent authority to consent to a search of her boyfriend's apartment remained even though there were facts in the record indicating that her name was not on the lease, she did not have access to the apartment when the defendant was away, and that she had removed some of her possessions from the house.

The Court recognized, however, that there might be circumstances wherein someone's representation that they have authority to grant access to a dwelling might be insufficient to constitute valid consent to search it. Specifically, the Court made clear that its holding:

> does not suggest that law enforcement officers may always accept a person's invitation to enter premises. Even when the invitation is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry.

*Id.* at 188. To illustrate this possibility, the Court noted that the night clerk at a hotel had previously been found not to have possessed sufficient apparent authority for officers to have reasonably believed he could consent to a search of the defendant's room. *Id.* at 187 (referring to *Stoner v. California*, 376 U.S. 483, 488 (1964)). Later, in *Georgia v.*

5

*Randolf*, the Court stated that "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." 547 U.S. 103, 120 (2006).

With this guidance from the Supreme Court, the Sixth Circuit has considered several cases concerning the apparent authority of a cohabitating girlfriend to consent to a search of her boyfriend's apartment, most of which have been decided in favor of the police. In *United States v. Gillis*, the Sixth Circuit found that the officers were reasonable in finding that Shaneska Williams, the defendant's live-in girlfriend, had apparent authority to consent to the search of the defendant's dwelling. 358 F.3d 386, 391 (6th Cir. 2004). In addition to the officers' knowledge that Willams's name was on the lease, the court found that:

> [t]he officers did know that Williams had provided them with detailed information about the premises, including the locations where Gillis had drugs hidden on the property. They also had statements from Williams that she continued to reside at 1500 and that she had been at the residence earlier that same morning. Under these circumstances, the officers had enough information at the time of the search to reasonably conclude that Williams had apparent authority to consent.

*Id.* This was true even though there was some indication that Williams had departed from the residence several months earlier. *Id*. at 387-388.

In *United States v. Penney*, Devota Bowman had a six-year tempestuous romantic relationship with the defendant, which often brought the police to their dwelling. 576 F.3d 297, 301 (6th Cir. 2009). After being separated for six months, the two reconciled the day before the incident. *Id*. at 307. When Bowman arrived at the police station, she reported that the defendant had assaulted her and removed her from the house. *Id*. She also provided the officers information about narcotics in the dwelling. *Id*. at 308.

6

Bowman accompanied the officers to the residence where she pointed out her personal possessions and helped the officers locate the contraband. *Id*. The Court found that officers reasonably believed that Bowman had apparent authority in light of the following facts: the officers were aware of the nature of the relationship with the Bowman and the defendant; Bowman indicated that she had moved back into the apartment; Bowman's account of the assault was supported by her appearance; Bowman provided information about the car that was parked at the residence as well as where the drugs were; and once inside the house, the officers observed Bowman was not merely an overnight guest in part because of the belongings that she gathered. *Id*. at 307-308. The court made this finding even though Bowman listed a different address on the complaint form, she had no key to the apartment, the officers did not investigate the names on the lease, and the defendant actually appeared at the police station to indicate that he had thrown Bowman out and did not want her to come back.

The Court finds that, on the scale of apparent authority, this case falls in between *Gillis* and *Penney*. The Magistrate Judge found that Mitchell had informed the officers that she had lived with Clay for a period of months. [R. 31 at 11] (citing Government's Hrg. Ex. No. 7). She told them that Clay had assaulted her and thrown her out earlier that day, and her appearance corroborated that story. [R. 31 at 2] (citing R. 25 at 12-14). She signed a consent form that identified the targeted premises as "my premises." [R. 31 at 11]. Further, she provided the officers with information as to the location of Clay's drugs and guns. [R. 31 at 2-3] (citing R. 25 at 63-65). This is much of the same information available to the police in *Gillis*, and, like those officers, the Frankfort police officers were justified in relying on it as showing that Mitchell lived in the apartment and had apparent

7

authority to consent to a search thereof. *See United States v. Hudson*, 405 F.3d 425, 442 (6th Cir. 2005) (characterizing the court's earlier holding in *Gillis* as follows: "[w]e found apparent authority to exist largely on the basis of the girlfriend's statements that she lived at the defendant's apartment and was able to provide specific information about spots therein where the defendant hid drugs.").

Clay argues the officers should have had to investigate the situation further because ambiguity crept in when the officers learned that Mitchell did not have a key and that her name was not on the lease. For this proposition he cites *United States v. Waller*, which states that:

> [t]he government cannot establish that its agents reasonably relied upon a third party's apparent authority "if agents, faced with an ambiguous situation, nevertheless proceed without making further inquiry. If the agents do not learn enough, if the circumstances make it unclear whether the property about to be searched is subject to 'mutual use' by the person giving consent, 'then warrantless entry is unlawful without further inquiry.' " *United States v. McCoy,* Nos. 97-6485, 97-6486, 97-6488, 181 F.3d 105, 1999 WL 357749, at *10 (6th Cir. May 12, 1999)

426 F.3d 838, 846 (6th Cir. 2005). Notably, however, *Waller* says nothing of keys, leases, or even the consent to search someone's residence. In *Waller*, the Court found that, after the police had entered a residence, it was ambiguous whether third parties could consent to search of a brown luggage bag that they admitted that they did not own. *Id*. In some ways, *Waller* works to show that the Frankfort police officers employed the correct procedure after they entered the Leawood apartment. When the officers encountered the locked closet door, they sought a warrant rather than extending the search beyond Mitchell's apparent authority. Had the officers in *Waller* approached the luggage bag inside the residence as the Frankfort police approached the closet, there would likely have been no constitutional violation.

The ambiguities that Clay cites – that Mitchell's name was not on the lease and that she did not have a key – have been previously found insufficient to categorically undermine apparent authority of a live-in girlfriend in situations similar to this. While the consenting third-party in *Gillis* did show that her name was on the lease, that is certainly no requirement for a finding of apparent authority. In determining whether a party lives on and has authority to consent to a search of the premises, "[n]o one fact, *such as who appears on the lease of a premises*, is determinative." *Hudson*, 405 F.3d at 442 (wherein the Sixth Circuit found that a third party possessed apparent authority despite the fact that the officers knew that her name was not on the lease) (emphasis added). Further, citing favorably to the opinion of the magistrate judge, the *Penney* court recognized that "it is a reality in today's world that consenting adults often co-habitat [sic] together without benefit of legal formalities-including those formalities relating to the establishment of property interests." *Penney*, 576 F.3d at 308. Under the same reasoning, the facts that the lease and the statements of a remote employee of the apartment complex do not reflect that the Clay and Mitchell are the tenants of record, do not render these circumstances ambiguous. This is especially true in light of the fact that Mitchell, a competent adult, admitted to living at the residence and identified the location of the drugs and gun inside.

These circumstances are also not made ambiguous by the fact that Mitchell did not have a key to the residence. In *Gillis*, the defendant's girlfriend did not have a key to the outside doors of the residence, but the officers were still found to have reasonably judged her as possessing apparent authority to consent. 358 F.3d at 388. Moreover, as discussed, the live-in girlfriend in *Penney* neither had her name on the lease nor had a key

9

to enter the residence. In that case the court made the logical point that a woman who had been assaulted and was vanquished from her dwelling might not have had the time or presence of mind to pick up a key before she left. Further, the court found that the cohabitating girlfriend in *Penney* had apparent authority to consent to a search of the residence even though the defendant appeared at the police station and informed the officers that he had thrown her out and did not want her to stay at his residence anymore. 576 F.3d at 301, 317. It would certainly be difficult to characterize the circumstances in this case as ambiguous when the Sixth Circuit found that those in *Penney* were not.

Clay argues that *Penney* is less ambiguous and distinguishable because the officers were familiar with the six-year on-again and off-again relationship of the defendant and the consenting cotenant. However, this fact cuts both ways. The case clearly indicates that the officers were aware that the defendant and his girlfriend lived in the apartment at issue when together, but they also were aware that she lived somewhere else when they were separated. *Id*. at 307. Thus, while the officers' historical knowledge of the relationship is a factor that suggested Bowman, the defendant's live-in girlfriend, might have authority over the residence, it is not nearly the dispositive fact that Clay claims it to be. In fact, if this factor could be said to have any special meaning in *Penney*, it would largely be to explain why the police might have felt comfortable entering the dwelling on Bowman's consent when the defendant had appeared at the police station to inform them that he had thrown Bowman out and did not want her to come back. *Id*. at 309.

The Magistrate Judge concluded that the reasonableness of finding Mitchell to have had apparent authority is enhanced by the officers' findings at the apartment, which

10

corroborated her statements. When the officers arrived at the residence, they noticed that the brown van described by Mitchell was parked in the parking lot. [R. 31 at 11] (citing Defendants Hrg. Ex. No. 2 at 66). Further, upon entering the apartment, the officers saw evidence that Clay had been sharing the apartment with a female and that there was, in fact, a locked closet door as Mitchell had described. [R. 31 at 4, 11, 15]. In Judge Wier's view, these facts assisted in corroborating the information provided by Mitchell and by showing her to be familiar with the residence in the way of someone who lived in and had authority over the premises.

Clay takes issue with the Magistrate Judge's consideration of the brown van[2] and Mitchell's personal belongings inside the residence because the searching officers were not able to use those as corroborating factors at the time that they entered the residence. In responding to this contention, the Court first notes that, while these facts are helpful, they are not necessarily essential to the apparent authority determination. Further, the Magistrate Judge appears to have found that Mitchell had made the searching officers aware before they entered the apartment that she and Clay drove a brown van, which was, in fact, parked at the apartment when the officers arrived. [R. 31 at 11]. Since the Magistrate Judge viewed the witnesses and testimony first hand, the Court must give this finding great deference and uphold them unless they are clearly erroneous. *United States v. Valencia*, 3:11-CR-00159-H, 2012 WL 6043288 (W.D. Ky. Dec. 5, 2012) (citing *United States v. Esteppe,* 483 F.3d 447, 452 (6th Cir.2007)). The Court finds that the record could reasonably support the Magistrate Judge's conclusion that the searching

---

[2] Specifically, Clay argues that Mitchell only mentioned any information about the brown van to Officer Quire. In Clay's version of the facts, Officer Quire neither entered the apartment nor told the other officers this information before they entered. Notably, this version of the facts appears to be contrary to the findings of the Magistrate Judge.

officers would have been informed of the van and that finding it parked at the apartment would have given them increased confidence in the statement of Mitchell, just as it did the officers in *Penney*. 576 F.3d at 307 ("Bowman's car was parked outside the residence, consistent with her account of that morning's events.").

In addition, when the Magistrate Judge looks to the presence of Mitchell's possessions and the locked closet inside the apartment as additional evidence of her apparent authority, he is doing nothing that has not previously been endorsed by the Sixth Circuit. *See United States v. Grayer*, 232 F. App'x 446, 449 (6th Cir. 2007) (Speaking of Jacqueline Clay, the defendant's live-in girlfriend, the Sixth Circuit panel stated, "[t]he room contained her personal effects. She had knowledge of the contents of the room when she pointed to a clothes hamper that hid the gun. Nothing in the record indicates that Clay consented to a search outside the scope of her authority, nor that the officers acted unreasonably when they relied on Clay's consent to search the back bedroom."); *Penney*, 576 F.3d at 308 (the defendant's live-in girlfriend "led officers through the residence and picked up her belongings from drawers, a laundry basket, and the washing machine, which she gathered into 'several bags.'"). While this may seem somewhat counterintuitive, information inside the apartment could be considered relevant to the apparent authority analysis because it reassures the officers as they search that they are not exceeding the scope of the area over which Mitchell had the apparent authority to consent to a search.

In summary, Mitchell's name might not have been on the lease and she did not have a key, but she did affirmatively represent that she had lived at the Leawood apartment with Clay for several months, and was willing to sign a form declaring it her

12

premises. [R. 31 at 11] (citing Government's Hrg. Ex. No. 7). Further, Mitchell's appearance corroborated that she had been assaulted that morning and she was able to provide a description of where the contraband was in the apartment. [R. 31 at 2-3] (citing R. 25 at 12-14, 63-65). When the police arrived at the Leawood apartment they found the van Mitchell had described, and when they entered the residence, they uncovered the locked closet and evidence that someone else lived in the apartment besides Clay. [R. 31 at 11] (citing Defendants Hrg. Ex. No. 2 at 66); [R. 31 at 4, 11, 15]. Therefore, as has been the case in the overwhelming majority of these type of cases, it was reasonable for the Frankfort police officers to believe that Mitchell did live in the Leawood apartment and had apparent authority to consent to a search of the premises. *See Hudson*, 405 F.3d at 442 (citing *Rodriguez,* 497 U.S. at 183–84) (emphasis omitted). The consistent findings of the Magistrate Judge are adopted and Clay's objection to the contrary is overruled.

B

Clay's objection to the Magistrate Judge's finding that probable cause was sufficiently shown in the affidavit to support a warrant may be more expeditiously resolved. The complete text of the warrant affidavit states as follows:

> Officers of the Frankfort Police Department investigated a domestic violence complaint at 803 Leawood Dr. Frankfort KY. 40601 #12. The investigation led to the complainant of the domestic violence complaint advising that CLAY, Dono Demil was involved in trafficking controlled substances from the subject premises. The complainant, who lives in the apartment with Dono Demil Clay and has done so since February, 2013, gave consent to search the premises, and officers entered the premises and observed a locked closet in the rear bedroom. There was no key available for this locked closet. The complainant also advised that Clay usually keeps a firearm in the closet and cocaine in a top dresser. The security of the premises has been maintained until the same can be searched pursuant to a search warrant. It is reasonably believed based on the foregoing the

13

> foregoing [*sic*] that search of the subject premises will result in the collection of evidence of drug trafficking.

[R. 31 at 4]. Clay argues that the warrant is constitutionally insufficient because "the information presented to the state court judge was only a generalized representation by an unnamed person whose veracity the police had no cause or capacity to affirm or corroborate." [R. 33 at 13].

In determining the sufficiency of an affidavit, a court must determine, "whether the magistrate judge had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004) (citing *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)). As affidavits are often drafted by "nonlawyers in the haste of a criminal investigation," the Supreme Court has recognized that, "technical requirements of elaborate specificity once exacted under common law pleading have no proper place in this area." *Illinois v. Gates*, 462 U.S. 213, 236 (1983). Instead, "the affidavit should be reviewed in a commonsense rather than hypertechnical manner, and the court should consider whether the totality of the circumstances supports a finding of probable cause rather than engaging in line-by-line scrutiny." *Woosley*, 361 F.3d at 926 (citing *United States v. Greene*, 250 F.3d 471m 479 (6th Cir. 2001). In making this determination the court should give "great deference" to the magistrate's probable cause determination, which should be "reversed only if the magistrate arbitrarily exercised his discretion." *Id*.

Clay's argument that this warrant affidavit does not survive substantial basis review is predicated on the fact that the warrant does not disclose Mitchell's name to the magistrate, and that the affidavit is devoid of any specific information to corroborate

Mitchell's representations.[3] However, the fact that an informant is not named in the warrant affidavit "is not fatal to the establishment of probable cause." *United States v. Caldwell*, 114 F. App'x 178, 181 (6th Cir. 2004) (citing *United States v. Davidson,* 936 F.2d 856 (6th Cir.1991)). "[T]he affidavit is judged on the adequacy of what it does contain, not on what it lacks, or in what a critic might say should have been added." *Woosley*, 361 F.3d at 924 (citing *United States v. Allen*, 211 F. 3d 970 (6th Cir. 2001) (en banc)). Even if the state magistrate judge was not provided with significant information about Mitchell's reliability, the affidavit could still be constitutionally valid if it includes "sufficient corroboration that the state court judge could determine, under the totality of the circumstances, that probable cause existed." *Id* at 927.

In this case, the warrant affidavit prepared by the Frankfort police officers and signed off on by the Frankfort County Attorney includes sufficient corroboration to support a finding of probable cause by the state magistrate judge. Counter to the representations of Clay, this is no anonymous tipster case where an unknown source provides the police with a nebulous report that crime might be happening in some nearby place. This affidavit makes clear that an adult indicated to the police that the defendant was engaged in drug trafficking in the apartment that they lived in together. As a result, it would have been plain from the face of this warrant affidavit that the informant would have had intimate knowledge of the activities of the apartment and the illicit contents of the closet. Moreover, the informant associates contraband with the locked closet that the police found upon entry and for which the police were seeking a warrant to search. Even

---

[3] In his motion to suppress, Clay also argues that the officers conducted the search before they procured the warrant. Though Clay's factual recitation implies that he takes some issue with the Magistrate Judge's chronology, he does not advance a specific objection to the Recommended Disposition on this ground. As such, the Court need not engage in a *de novo* review of the Magistrate Judge's conclusion on that issue herein. *See Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).

Clay, who attempted to have this portion of the affidavit excluded, admitted that this information "provided some corroboration to that unidentified source and buttressed her credibility." [R. 33 at 14]. Because of the Court's previous finding that no portion of the warrant affidavit need be excised due to an unconstitutional entry of the apartment, Clay's argument on this point is weakened. The Court agrees with the Magistrate Judge that, while the warrant is no model of excellence, it did provide a substantial basis for the state magistrate judge's conclusion that the officers had probable cause to search the locked closet in Clay's apartment. [*See* R. 31 at 21-22]. Clay's objection to the contrary is overruled.

Finally, it should be noted that Clay also argues that the good faith exception to the exclusionary rule does not apply to allow the officers to conduct a search in the absence of a valid warrant. However, as the Court has found that the Frankfort police officers had apparent authority from Mitchell to enter the Leawood apartment and that they did secure a valid warrant to conduct the search of Clay's locked closet, no discussion of the good faith exception is necessary.

III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. The Defendant's Objections to the Magistrate's Report and Recommendation [R. 33] are **OVERRULED**;

2. The Magistrate Judge's Recommended Disposition [R. 31] is **ADOPTED** as and for the opinion of this Court; and

3. The Defendant's Motion to Suppress [R. 20] is **DENIED**.

16

This 20th Day of February, 2014.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge