UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No.: 13-15-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| DONO DEMIL CLAY | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |


*** *** *** ***

After the United States concluded its presentation of the evidence, Defendant Dono

Demil Clay moved for a judgment of acquittal on all of the charges against him, including Count

Two of the indictment that charged him with possession of a firearm in furtherance of a drug

trafficking offense under 18 U.S.C. § 924(c). Essentially he argued that his firearm, which was

possessed illegally, loaded, positioned in close proximity to drug paraphernalia and cocaine, and

found in a place where testimony indicated that he trafficked cocaine, was not possessed in

furtherance of the charged drug trafficking offense. The Court denied the motion. Having been

convicted by the jury on all counts, Clay now tries his argument again through a written motion

for acquittal. [R. 68]. For the reasons previously stated and that will be repeated in more detail

below, Clay's motion shall again be **DENIED**.

I

Through somewhat significant motion practice and a full criminal trial, the facts of this

case are well documented in the record and need not be repeated in full. As relevant to this

motion there are but a few relevant facts and they are largely undisputed. When the Frankfort

police officers searched the closet in Defendant Dono Demil Clay's room, they found three bags

of cocaine, each weighing about 27 grams. [R. 69 at 2]. On the same shelf in that closet the

officers found a loaded .380 caliber handgun zipped up in a black bag. [*Id*.] Clay stipulated that

he was a convicted felon, and, as such, he could not legally be in possession of this weapon. [*Id*.

at 3]. The dresser next to the closet contained four cell phones, baggies, two sets of digital

scales, a spoon, a folded dollar bill with cocaine residue inside, another small bag of cocaine,

papers with the Clay's name on them, and $467.00 in currency. [*Id*. at 2]. The officers also

found another bag under the couch cushions in the living room containing nearly 17 grams of

cocaine. [*Id*.] Detective Scott McIntosh testified at trial that, based on his training and

experience, the amount of cocaine found is consistent with distribution rather than personal use.

[*Id*. at 3]. Further, he testified that the handgun that police found in the closet is the same type of

weapon that drug traffickers often carry in order to protect their drugs and proceeds because it is

easy to transport and conceal. [*Id*.]

Though the closet was locked when the officers entered the apartment, Kendra Mitchell

testified at trial that it was unlocked most of the time when Clay was home. [*Id*.] Mitchell was

the live-in girlfriend of Clay who had originally come to the police and indicated that she knew

the location of drugs and a gun in their apartment. [*Id*.] Mitchell also testified that she was

aware that Clay engaged in drug trafficking in the apartment, and that she knew he had sold

cocaine from the apartment within days of the police search. [*Id*.] According to Mitchell, when

Clay engaged in drug transactions, he obtained the cocaine from his bedroom closet. [*Id*. at 6]

Having heard this evidence, a jury convicted Clay of drug trafficking, being a felon in

possession of a firearm, and possessing a firearm in furtherance of a drug crime in violation of 18

U.S.C. § 924(c). [R. 61]. Clay now argues that, pursuant to Federal Rule of Criminal Procedure

29(c), there was insufficient evidence to show he possessed the handgun in furtherance of the

drug trafficking crime and, as a result, he should be acquitted of the Section 924(c) charge. [R.

68].

II

A

Under Federal Rule of Criminal Procedure 29, a motion for judgment of acquittal, "is a

challenge to the sufficiency of the evidence." *United States v. Kuehne,* 547 F.3d 667, 696 (6th

Cir.2008) (quoting *United States v. Jones,* 102 F.3d 804, 807 (6th Cir.1996)). "In deciding

whether the evidence is sufficient to withstand a motion for an acquittal, and support a

conviction, the court views all evidence in the light most favorable to the prosecution and

determines whether there is any evidence from which a reasonable jury could find guilt beyond a

reasonable doubt." *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999). Acquittal is

required only, "if 'there is no evidence upon which a reasonable mind might fairly conclude guilt

beyond a reasonable doubt.' " *United States v. Davis,* 981 F.2d 906, 908 (6th Cir.1992) (quoting

*United States v. Fawaz,* 881 F.2d 259, 261 (6th Cir.1989)).

Clay argues that there is insufficient evidence for the jury to have found that he possessed

the handgun in furtherance of the drug trafficking crime. For the Government to show that a

defendant possessed a firearm "in furtherance of" a drug trafficking crime, it must do more than

simply show that a firearm was present on the premises when a drug transaction occurred. *United

States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001). Instead, Section 924(c) requires "a specific

nexus between the gun and the crime charged." *Id*. (citing *United States v. Finley,* 245 F.3d 199,

203 (2d Cir.2001)). The Sixth Circuit has articulated a non-exclusive list of factors for courts to

consider in determining whether firearm possession was sufficiently connected to the drug

trafficking crime so as to fall within the scope of Section 924(c):

> In order for the possession to be in furtherance of a drug crime, the firearm must
> be strategically located so that it is quickly and easily available for use….Other
> factors that may be relevant to a determination of whether the weapon was
> possessed in furtherance of the crime include whether the gun was loaded, the
> type of weapon, the legality of its possession, the type of drug activity conducted,
> and the time and circumstances under which the firearm was found.

*Id*. (internal citations omitted).  The application of these factors is helpful to distinguish

"possession in furtherance of a crime from innocent possession of a wall-mounted antique or an

unloaded hunting rifle locked in a cupboard." *Id.*  In *Mackey*, the court found a reasonable jury

could infer that the purpose of the firearm was to provide defense or deterrence in furtherance of

the drug trafficking crime because the evidence showed that there was an "illegally possessed,

loaded, short-barreled shotgun in the living room of the crack house, easily accessible to the

defendant and located near the scales and razor blades." *Id.*  Further, the Defendant was found to

be in possession cocaine and a large amount of cash.

Clay argues that his case is more like the Sixth Circuit's more recent decision in the

unpublished opinion of *United States v. Leary*, 422 F. App'x 502, 510 (6th Cir. 2011).  In *Leary*,

police searched the defendant's closet to find a bag with three firearms and a shelf on which a

small bag of crack cocaine had been placed. *Id*. at 505.  The Government argued that the close

proximity of the gun and the drugs established that the firearms were strategically located so that

they were quickly accessible for use in drug trafficking. *Id*. at 510.  The court disagreed, stating

that "it cannot be true that any time a gun is found near drugs it is necessarily the result of a

strategic decision relating to drug activity." *Id*. at 511.  This was especially true, in the panel's

view, since these "guns and the drugs were found in a closet—a storage space, rather than a

place from which drugs were sold." *Id*.  Additionally, although the defendant possessed the

firearms illegally, the court found that the remaining *Mackey* factors also failed to reveal a

sufficient connection between the drugs and guns. The evidence showed that two of the guns

were unloaded, the amount of drugs found (3.8 grams) was consistent with personal use, no drug

manufacturing equipment was found in the apartment, and there was no evidence that drug

transactions had ever taken place there. *Id*. As such, the court found no specific nexus between

the guns and drugs in order to support a Section 924(c) conviction. *Id*. at 513.

While the facts of this case are similar to *Leary* – there is a closet with a gun and drugs in

it – the teachings of the case do not quite extend as far as Clay suggests. As an initial matter, it

appears to this Court that, in the context of the Sixth Circuit's prior Section 924(c) cases, *Leary*

seems to be a close case that represents a high bar of what is required to establish that a firearm

was possessed "in furtherance of" a drug trafficking crime. Even so, the case stops well short of

setting some categorical rule that when guns are found together in a closet with drugs, they are

not positioned strategically enough to allow for a substantial nexus between the two. On the

contrary, the Sixth Circuit panel simply applied the *Mackey* factors to the facts of the case and

found that a specific nexus between the drugs and guns was lacking under those circumstances.

As there are several critical distinctions between this case and *Leary*, applying the same

*Mackey* factors to the circumstances of this case, leads to a different result. Clay argues that no

reasonable juror could find that the handgun in the closet was strategically located so that it was

quickly and easily available for use. However, this conclusion can only be drawn when the

analysis is divorced from the facts of this case. Of course, a closet could be used simply for

storage of one's personal effects, but under these facts, a reasonable jury could conclude that

Clay's closet was, in fact, the central locus of his drug trafficking operation. The closet

contained more than eighty grams of cocaine. Whereas the few grams Leary's closet was

consistent with personal use, trial testimony in this case indicates that this large amount of

cocaine in Clay's closet is consistent with distribution and could have been worth more than

$8,000. This quantity of cocaine was on the same shelf and only a few feet away from the

firearm. Unlike Leary, where there was no testimony that drug trafficking ever occurred in the

apartment, Kendra Mitchell testified that Clay had sold drugs out of the apartment a matter of

days before the search. Further, while the door to the closet was locked when the police arrived,

Mitchell also testified that it was usually open when Clay was home, and that Clay retrieved the

cocaine from the closet when a drug transaction was in progress. Directly beside the closet, was

a dresser containing objects often associated with drug trafficking – baggies, digital scales, a

spoon, multiple cell phones, nearly $500, and a rolled up dollar with cocaine residue on it.

In short, there is clear evidence in the record to support a jury's conclusion that Clay had

been and continued to be involved in a significant drug trafficking operation, and that he

strategically located a firearm in the same general area of his drugs and equipment for the

purposes of furthering that drug trafficking operation. As such, the strategic location of the

firearm, type of drug activity conducted, and time and circumstances under which the firearm

was found, all represent *Mackey* factors that weigh in favor of finding a specific nexus between

the gun and drugs in Clay's closet.

The remaining *Mackey* factors are even more obviously damning for Clay. When

Frankfort police found the gun, it was loaded with five rounds of ammunition. Detective

McIntosh evaluated the .380 caliber semi-automatic firearm, and testified that it was of the type

of weapon commonly employed by drug traffickers because its small size made it easier to

transport and conceal. Finally, Clay stipulated at trial that he had previously been convicted of a

felony and, as a result, his mere possession of the firearm was not legal. Therefore, under the

6

evidence presented at trial, the Court finds that the *Mackey* factors support a finding of a specific nexus between the gun and drugs found in Clay's closet. There being no reason to disturb the jury's finding that Clay possessed a firearm in furtherance of a drug trafficking crime in violation of Section 924(c), the Court shall deny Clay's motion for acquittal.

## B

On a related matter, the Court shall also deny Clay's motion for release pending sentencing. The offense of conviction is a controlled substance offense as defined in 18 U.S.C. §3142(f)(1)(C). Under 18 U.S.C. § 3143(a)(2)(A) & (B), a defendant convicted under such an offense shall be detained unless there is "a substantial likelihood that a motion for acquittal or new trial will be granted," or "an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person." 18 U.S.C. § 3143(a)(2)(A) & (B). The Government has not indicated it will recommend no sentence of imprisonment, and, as discussed above, the defendant's motion for acquittal shall be denied. Further, detention is required "unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community." 18 U.S.C. § 3143(a). Clay's brief motion correctly states that he is a life-long resident of Franklin County and could reside with his grandmother in Frankfort. And while this might suggest that he is not a risk for flight, the previously discussed evidence would indicate that Clay, who has used a gun to traffic cocaine, is likely to pose a danger to the community if released. Therefore, Clay's motion for release pending sentencing shall be denied.

## III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

(1)     The Defendant's Motion for Judgment of Acquittal [R. 68] is **DENIED**;

(2)     The Defendant's Motion for Release from Custody Pending Sentencing [R. 71] is

**DENIED**;

(3)     The Defendant's sentencing hearing shall remain scheduled for **Tuesday, July 29,**

**2014, at 1:30 p.m.** at the United States Courthouse in **Frankfort**, Kentucky.

This 28th Day of May, 2014.

Signed By:

*Gregory F. Van Tatenhove*

United States District Judge