**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**FRANKFORT**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )    NO. 3:13-CR-00015-GFVT-MAS <br> ) |
| **DONALD DEMIL CLAY,** | ) <br> ) |
| Defendant. | ) <br> ) <br> ) |

**REPORT AND RECOMMENDATION**

The Court, on referral from the District Court, reviews reported violations of supervised release conditions by Defendant Donald Demil Clay. Considering the record, proffer, and Clay allocution at the revocation hearing, the Court recommends that the District Court revoke Clay's term of supervised release and sentence him to four months' imprisonment with six years of supervised release to follow.

**I.    CASE BACKGROUND**

On March 27, 2014, a jury convicted Clay of violations of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 851, Possession with Intent to Distribute Cocaine; 18 U.S.C. § 924(c)(1)(A)(i), Possession of a Firearm in Furtherance of Drug Trafficking; and 19 U.S.C. § 922(g)(1), Felon in Possession of a Firearm. [DE 60 and 61]. On July 29, 2014, District Judge Gregory Van Tatenhove sentenced Clay to a total of 130 months' imprisonment, to be followed by a total term of six years of supervised release. [DE

79]. Clay was released from custody and began serving his supervised release term on January 4, 2024.

## II. ALLEGED VIOLATIONS

Three months after his release to supervision, on April 3, 2024, Clay submitted to a urinalysis test with the United States Probation Office ("USPO"), which yielded positive results for cocaine and alcohol via an instant testing device. Clay admitted he "may have had a beer." [*See* Supervised Release Violation Report dated April 17, 2024]. However, Clay denied using cocaine, so the sample was sent to Alere Toxicology laboratories. On April 10, 2024, USPO received results from the laboratory that the specimen tested positive for ethyl glucuronide and ethyl sulfate (alcohol) as well as benzoylecgonine-cocaine metabolite.

The Supervised Release Violation Report submitted to the Court detailed the following violations: Violation 1: defendant shall not possess or use a controlled substance (cocaine); Violation 2: defendant shall not commit another federal, state, or local crime (use is equivalent to possession in the Sixth Circuit); Violation 3: defendant shall abstain from alcohol; and Violation 4: defendant shall answer truthfully all inquiries by the probation officer (Clay denied use of cocaine). Violations 1, 3, and 4 are Grade C violations. Violation 2 is a Grade B violation.

The Court conducted an initial appearance on the supervised release violations pursuant to Federal Rule of Criminal Procedure ("Rule") 32.1 on April 26, 2024. [119]. The Court advised Clay of his constitutional rights, including his right to a preliminary hearing pursuant to Rule 32.1(b)(1)(A). [DE 119]. Clay knowingly,

voluntarily, and intelligently waived his right to a preliminary hearing. The United States moved for interim detention, and Clay requested to be released. The Court heard proffer and arguments of counsel and ultimately found that Clay failed to carry his release burden pursuant to Rule 32.1(a)(6) and 18 U.S.C. § 3143(a). The Court ordered Clay detained pending the final hearing. [DE 119].

At the final hearing on May 2, 2024, the Court found Clay to be competent to enter a knowing, voluntary, and intelligent stipulation to all four violations. [DE 123]. For purposes of the Rule 32.1 proceedings, Clay admitted the factual bases for those violations. [DE 123]. Accordingly, the Court found that the United States established the reported violations as reflected pursuant to 18 U.S.C. § 3583(e).

"Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." United States Sentencing Guidelines ("USSG" or "Guidelines") § 7B1.2(b). Here, the most serious grade was Violation 2, the Grade B violation. Thus, a Grade B violation will be used to calculate Clay's Guidelines range.

Clay's criminal history at the time of sentencing was a Category VI and his original offense was a Class A felony. The parties agree that under these circumstances, the Guidelines propose a sentence of 21 to 27 months with a statutory maximum of 60 months. If the Courts revokes Clay's supervision, there is no maximum term of supervised release that can be reimposed, pursuant to 18 U.S.C. § 3583(h).

### III. ANALYSIS

The Court has evaluated the entire record and considered the arguments presented at the final hearing, the record concerning Clay's violations, the Presentence Investigation Report ("PIR"), and the factors set forth in 18 U.S.C. § 3583(e). Considering the incorporated § 3553(a) factors, revocation is warranted to reflect the circumstances surrounding the instant violations and Clay's original offense, to adequately deter Clay from future criminality, and to protect the public from any such future crimes. 18 U.S.C. §§ 3553(a)(1), (a)(2)(B)-(C). Revocation is also a necessary consequence for Clay's abuse of the Court's trust. See USSG § 7, Pt. A. intro. comment 3(b) (observing that "revocation . . . should sanction primarily the defendant's breach of trust").

In recommending a specific revocation sentence, the Court carefully considers the statutory factors in § 3553(a) as incorporated in § 3583(e), as well as the applicable Guidelines range. *See generally United States v. Johnson*, 640 F.3d 195 (6th Cir. 2011).

The original offense conduct arose out of a domestic violence call. When law enforcement arrived, they observed indicia of drug offenses in plain view and obtained a search warrant to search the residence, ultimately locating over 100 grams of cocaine and a loaded firearm (Clay was a felon at the time). Clay's history and characteristics include numerous convictions prior to his federal conviction, including 4th degree assault, fleeing police, possession of a controlled substance, violation of a DVO, and trafficking in a controlled substance, among others. This is reflected in his criminal history Category VI.

As noted, Judge Van Tatenhove imposed a sentence of 130 months' imprisonment to be followed by a six-year term of supervision. This sentence was at the lowest end of the Guidelines range for all three counts; additionally, Judge Van Tatenhove ran the sentences for Counts 1 and 3 concurrently (but consecutively to Count 2). His supervision term was six years total, which was the statutory minimum that Judge Van Tatenhove could impose. *See* 18 U.S.C. § 3553(a)(6) (considering "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct").

Clay and the United States differed on the appropriate consequence in this circumstance; however, they agreed that the Guidelines sentence of 21 to 27 months was far outside what was reasonable for the conduct at issue in these violations. Clay suggested revocation with three months' imprisonment followed by in-patient treatment at Deaton and Deaton, with supervision to expire in 2030 as currently scheduled. Clay justified this request by stating that he was on the right path at the time of his violations because he had a job and some stability in his life for a few months before the violation. He also noted that he was sober for his long—ten year—prison term, and therefore did not seek treatment or other support when he was released from custody, but realizes now he needs that support. However, Clay acknowledged that he was not forthcoming with the probation officer, and, therefore, some imprisonment time was appropriate to sanction his abuse of the Court's trust.

The United States countered that three months was insufficient, but again, that the Guidelines range was far above what was appropriate for the conduct at

issue. The United States suggested revocation with six months' imprisonment, followed by treatment at USPO's discretion and reimposition of supervision at the Court's discretion. The United States noted that this was Clay's first violation and that it felt it was important that substance use treatment be a part of the plan for Clay upon release from custody to give him the best chance of future success.

The Court generally agrees with the parties here. The Guideline range reflects Clay's criminal history category and the classification of the original offense far more than the offense conduct of the violations at issue. Clay allocuted and expressed his remorse, his understanding that there would be consequences for his actions, and his desire to address his substance use through treatment and get his life back on track. For these reasons, the Court recommends Clay's supervised release be revoked and that he serve four months imprisonment. Upon release, the Court further recommends the District Court reimpose six years' supervision, with the added condition that Clay participate in substance use treatment at the discretion of the USPO for three months upon his release from custody. Because Clay will have been incarcerated for several months, the Court expects that out-patient treatment may be more appropriate for him at that time. The Court finds that this sentence is sufficient, but not greater than necessary to protect the public, deter future criminal behavior, and sanction the violation of the Court's trust.

## IV.  CONCLUSION

Accordingly, for the reasons stated herein, the Court **RECOMMENDS** that:

(1)   Clay be found guilty of all violations;

(2) Clay's current term of supervised release be **REVOKED**;

(3) Clay be sentenced to an incarceration period of four months;

(4) Clay serve a reimposed **six year term** of supervised release to follow, subject to the following terms: three months of substance use treatment at the discretion of the USPO.

Clay preserved his right of allocution. Absent a waiver of allocution, this matter will be placed on Judge Van Tatenhove's docket for an allocution hearing upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within 14 days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Entered this 30th of May, 2024.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY